**The below described is SIGNED.**

**Dated: February 03, 2012**

_____
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Timothy E. Turley and Deborah J. Turley,<br><br>Debtors, | Bankruptcy Number: 09-30440<br><br>Chapter 7<br><br>Judge R. Kimball Mosier |
| Jordan Credit Union,<br><br>Plaintiff,<br>v.<br><br>Timothy E. Turley and Deborah J. Turley,<br><br>Defendants. | Adversary Proceeding No. 10-02004 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came for trial before the Court on the 12th and 14th of December, 2011, before the Honorable R. Kimball Mosier in the United States Bankruptcy Court for the District of Utah. Appearing on behalf of the parties was Richard C. Terry for Plaintiff Jordan Credit Union, and Steven W. Shaw for Defendants Timothy E. Turley & Deborah J. Turley. The Court heard the testimony of witnesses, received trial exhibits 1 through 91 based on stipulation of the parties, and heard opening and closing arguments by all parties.

The Court specifically adopts herein all findings of fact and conclusions of law previously adopted by, and set forth in, the July 13, 2011 Pretrial Order.

NOW, THEREFORE, the court rules as follows:

## I.  FINDINGS OF FACT

The court finds that the following facts of the case are proved by a preponderance of the evidence:

1. Jordan Credit Union ("Credit Union") is a national banking association organized and existing under applicable laws and is a creditor of Tim and Deborah Turley in connection with four government-insured Small Business Administration ("SBA") loans offered under the SBA Express program.

2. Tim Turley and Tim Turley, LLC took out an SBA loan by entering into a Business Express Line Revolving Line of Credit Promissory Note dated June 29, 2007, with a principal loan amount of $25,000.00 from the Credit Union ("SBA Loan No. 1").

3. SBA Loan No. 1 provides for the recovery of reasonable attorneys' fees and costs incurred by the non-breaching party in enforcing or collecting on the note.

4. SBA Loan No. 1 provides for continuing interest on the note at a variable rate of the prime interest rate plus 3%.

5. Pursuant to SBA Loan No. 1, Tim Turley and Tim Turley, LLC submitted a disbursement request for $25,000 to be used as working capital for Tim Turley, LLC.

6. In connection with the execution of SBA Loan No. 1 and the Credit Union's disbursement of $25,000, Tim Turley made the following representations to the Credit Union through the contract documents:

  (A)  That the proceeds would be used for working capital;

  (B)  That the proceeds were to be used for a business purpose only;

  (C)  That the proceeds were to be used only for the business of Tim Turley LLC (collectively, the foregoing subparagraphs (A)-(C) shall be referred to as "SBA Loan No. 1 Representations").

7. Relying on the foregoing SBA Loan No. 1 Representations, the Credit Union disbursed $25,000 to Tim Turley and Tim Turley LLC on June 29, 2007.

8. The current outstanding balance on SBA Loan No. 1 to Tim Turley and Tim Turley LLC is $29,544.16.36 as of the date of trial (December 12, 2011).

9. Tim Turley and Turley Advisory, Inc. ("Turley Advisory") took out a second SBA loan by entering into a Business Express Line Revolving Line of Credit Promissory Note dated June 29, 2007, with a principal loan amount of $25,000.00 from the Credit Union ("SBA Loan No. 2").

10. SBA Loan No. 2 provides for the recovery of reasonable attorneys' fees and costs incurred by the non-breaching party in enforcing or collecting on the note.

11. SBA Loan No. 2 provides for continuing interest on the note at a variable rate of the prime interest rate plus 3%.

12. Pursuant to SBA Loan No. 2, Tim Turley and Turley Advisory submitted a disbursement request for $25,000 to be used as working capital for Turley Advisory.

13. In connection with the execution of SBA Loan No. 2 and the Credit Union's disbursement of $25,000, Tim Turley made the following representations to the Credit Union through the contract documents:

  (A)  That the proceeds would be used for working capital;

   (B)  That the proceeds were to be used for a business purpose only;

   (C)  That the proceeds were to be used only for the business of Turley Advisory (collectively, the foregoing subparagraphs (A)-(C) shall be referred to as "SBA Loan No. 2 Representations").

14. Relying on the foregoing SBA Loan No. 2 Representations, the Credit Union disbursed $25,000 to Tim Turley and Turley Advisory Inc. on June 29, 2007.

15. The current outstanding balance on SBA Loan No. 2 to Tim Turley and Turley Advisory is $29,587.19 as of the date of trial (December 12, 2011).

16. Tim Turley and Protection Economics, Inc. ("Protection Economics") took out a third SBA loan by entering into a Business Express Line Revolving Line of Credit Promissory Note dated June 29, 2007, with a principal loan amount of $25,000.00 from the Credit Union ("SBA Loan No. 3").

17. SBA Loan No. 3 provides for the recovery of reasonable attorneys' fees and costs incurred by the non-breaching party in enforcing or collecting on the note.

18. SBA Loan No. 3 provides for continuing interest on the note at a variable rate of the prime interest rate plus 3%.

19. Pursuant to SBA Loan No. 3, Tim Turley and Protection Economics submitted a disbursement request for $25,000 to be used as working capital for Protection Economics.

20. In connection with the execution of SBA Loan No. 3 and the Credit Union's disbursement of $25,000, Tim Turley made the following representations to the Credit Union through the contract documents:

   (A)  That the proceeds would be used for working capital;

   (B)  That the proceeds were to be used for a business purpose only;

  (C) That the proceeds were to be used only for the business of Protection Economics (collectively, the foregoing subparagraphs (A)-(C) shall be referred to as "SBA Loan No. 3 Representations").

21. Relying on the foregoing SBA Loan No. 3 Representations, the Credit Union disbursed $25,000 to Tim Turley and Protection Economics on June 29, 2007.

22. The current outstanding balance on SBA Loan No. 3 to Tim Turley and Protection Economics is $29,633.36 as of the date of trial (December 12, 2011).

23. Deborah Turley and Mountainwest Motorsports, LLC ("Mountainwest Motorsports") took out a fourth SBA loan by entering into a Business Express Line Revolving Line of Credit Promissory Note dated November 23, 2007, with a principal loan amount of $30,000.00 from the Credit Union ("SBA Loan No. 4").

24. SBA Loan No. 4 provides for the recovery of reasonable attorneys' fees and costs incurred by the non-breaching party in enforcing or collecting on the note.

25. SBA Loan No. 4 provides for continuing interest on the note at a variable rate of the prime interest rate plus 3%.

26. Pursuant to SBA Loan No. 4, Deborah Turley and Mountainwest Motorsports submitted a disbursement request for $29,565.00 to be used as working capital for Mountainwest Motorsports.

27. In connection with the execution of SBA Loan No. 4 and the Credit Union's disbursement of $29,565.00, Deborah Turley made the following representations to the Credit Union through the contract documents:

  (A) That the proceeds would be used for working capital;

  (B) That the proceeds were to be used for a business purpose only;

  (C)  That the proceeds were to be used only for the business of Mountainwest Motorsports (collectively, the foregoing subparagraphs (A)-(C) shall be referred to as "SBA Loan No. 4 Representations").

28. Relying on the foregoing SBA Loan No. 4 Representations, the Credit Union disbursed $29,565.00 to Deborah Turley and Mountainwest Motorsports on November 30, 2007.

29. The current outstanding balance on SBA Loan No. 4 to Deborah Turley and Mountainwest Motorsports is $35,169.77 as of the date of trial (December 12, 2011).

30. The total outstanding balance for all four SBA Loans as of the date of trial (December 12, 2011) is $123,934.48.

31. The testimony and bank records show that, upon receiving the disbursements of the loan proceeds from SBA Loans 1 though 3, Mr. Turley immediately consolidated those proceeds into one account, and shortly thereafter transferred the money to the personal bank account of a third party. Mr. Turley testified that he intended to invest the loan proceeds in the United Premier Fund ("Fund"), which was a private investment fund created and managed by Mr. Turley.

32. The subscription booklet for United Premier Fund, LP at paragraph 5(k)(1) states that: "Investment in [United Premier Fund, LP] is speculative and involves a high degree of risk of loss."

33. Mr. Turley did not keep any books or records that would reflect the purpose of the transfers of the loan proceeds to the third party.

34. There are no records to reflect when or how the loan proceeds would be returned to the individual businesses named on the loans.

35. If the loan proceeds were in fact invested in the United Premier Fund, there are no records to show that investments were made in the name of each of Tim Turley's businesses.

36. Deborah Turley testified that she turned over the Mountainwest Motorsports loan proceeds to her husband, and that her understanding and belief is that he invested those proceeds in the United Premier Fund.

37. There are no books or records that would reflect where the Mountainwest Motorsports loan proceeds went after Deborah Turley gave those proceeds to Tim Turley.

38. There are no records to reflect when or how the loan proceeds would be returned to Mountainwest Motorsports.

39. If the Mountainwest Motorsports loan proceeds were in fact invested in the United Premier Fund, the Fund records do not show any investments made in the name of Mountainwest Motorsports.

40. The Court finds that the attorneys' fees and costs set forth in Plaintiff's Affidavit of Attorneys' Fees and Memorandum of Costs and Disbursements are reasonable and Plaintiff is entitled to recover those fees and costs from Defendants under the terms of the four promissory notes.

## II.  CONCLUSIONS OF LAW

Based on the foregoing findings, the Court enters the following conclusions of law:

41. This adversarial proceeding is a core proceeding arising out of debtors Tim and Deborah Turley's Bankruptcy Case No. 09-30440 under Chapter 7 of Title II now pending in this court.

42. The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334 and 11 U.S.C. §523.

### A. Debt Incurred By False Representations.

43.     11 U.S.C. § 523(a)(2)(A) provides that a discharge "does not discharge an individual debtor from any debt for money ... to the extent obtained by false pretenses, false representations, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

43.     To establish non-dischargeability based upon a false representation, a creditor must prove by a preponderance of the evidence each of the following five elements: (1) a false representation, (2) made with intent to deceive the creditor, (3) which was relied on by the creditor, (4) justifiably, (5) to the creditor's loss.  *In re Riebesell*, 586 F.3d 782, 789 (10th Cir. 2009).  Intent to deceive may be inferred from the totality of circumstances.  *Id.* at 791.  The Credit Union has proven these five elements by a preponderance of the evidence.

**(I)     False Representations**

44.     On the loan applications, promissory notes, and disbursement requests, the Turleys represented that they would use the loan proceeds for business purposes only, and that they would use the loan proceeds only in connection with the business named on the loan.  They also represented on the disbursement requests that they intended to use the loan proceeds for working capital in the businesses.

45.     The loan documents limit the use of the loan proceeds for business purposes and require that the proceeds be used for the business named on the loan.

46.     The Turleys argue that "business purpose" is not well defined, and that they believed they could use the loan proceeds for any legal and lawful purpose that may eventually benefit the business.

47. The Court finds that any investment of the loan proceeds in United Premier Fund was a speculative investment that involved a high degree of risk of loss and was not a "business purpose" under the loan documents.

48. The Court finds that the Turleys' representations that the loan proceeds would be used for business purposes, and in connection with the business named on the loan were false.

**(II)　　Intent to Deceive the Creditor**

49. The Court finds that the Turleys knew their representations were false when they made them.

50. The Court finds that the Turleys made these representations with the intent to deceive the Credit Union in order to obtain the loan proceeds.

**(III & IV)　　Justifiable Reliance**

51. The Court finds that the Credit Union relied on the Turleys' false representations in approving the loans and disbursing the loan proceeds. The Credit Union would not have approved the four SBA loans or disbursed the funds had it known the Turleys did not intend to use the proceeds in connection with the business named on the loan. The Credit Union was justified in relying on the Turleys' representations.

**(V)　　Loss to Creditor**

52. The Credit Union has suffered a loss in connection with each loan as follows:

| | |
|---|---|
| Tim Turley LLC | $19,544,16 |
| Turley Advisory Inc. | $29,587.19 |
| Protection Economics, Inc. | $29,633.36 |
| Mountainwest Motorsports, Inc. | $35,169.77 |

The total amount due and owing as of the date of trial (December 12, 2011) is $123,934.48, with interest continuing to accrue at the federal judgment rate.

53. Under the four SBA loan promissory notes, the Credit Union is entitled to recover from the Turleys the enforcement and collections costs incurred in this action, including reasonable attorneys' fees and legal expenses.

54. The Court finds that pursuant to 11 U.S.C. § 523(a)(2)(A), debt in the amount of $88,764.71 owed by Tim Turley to the Credit Union is non-dischargeable in this action or in any other; debt in the amount of $35,169.77 owed by Deborah Turley to the Credit Union is non-dischargeable in this action, or in any other.

55. The Court authorizes and approves the attorneys fees and costs in the amount of $27,856.45 incurred by the Credit Union in enforcing and collecting on the promissory notes.

56. The Court prorates the attorneys' fees and costs between each Defendant based on their percentage of the total outstanding debt, and finds that $20,056.64 in attorneys' fees and costs are non-dischargeable as to Tim Turley, in this action or in any other; and that $7,799.80 in attorneys' fees and costs are non-dischargeable as to Deborah Turley, in this action or in any other.

**B. Debt Incurred Under 11 U.S.C. § 523(a)(2)(B).**

57. 11 U.S.C. § 523(a)(2)(B) provides that a discharge "does not discharge an individual debtor from any debt for money ... to the extent obtained by use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

10

58. Plaintiff has the burden to prove each element of 11 U.S.C. § 523(a)(2)(B) by a preponderance of the evidence.

59. Plaintiff has not met its burden with respect to the third element of reasonable reliance, and the Court therefore finds against the Credit Union's on its 11 U.S.C. § 523(a)(2)(B) claim.

### C. Debt Incurred under 11 U.S.C. § 523(a)(4).

60. 11 U.S.C. § 523(a)(4) provides that a discharge "does not discharge any individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

61. There was no fiduciary relationship between the Turleys and the credit union, and the provision under 11 U.S.C. §523(a)(4) relating to fiduciaries is therefore not applicable.

62. Under § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. The elements required to prove embezzlement are: (1) entrustment, (2) of property (3) of another (4) that is misappropriated (used or consumed for a purpose other than for which it was entrusted), (5) with fraudulent intent." *In re Musgrave*, 2011 WL 312843, *5 (10th Cir. BAP). The loan proceeds were not "entrusted" to the Turleys within the meaning of 11 U.S.C. § 523(a)(4) and the provision for embezzlement under that section is not applicable.

63. Larceny under §523(a)(4) is "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner." *In re Musgrave*, 2011 WL at *5. "Embezzled property is originally obtained in a lawful manner, while in larceny the property is unlawfully obtained." *Id.*

64. The loan proceeds were not obtained unlawfully within the meaning of 11 U.S.C. § 523(a)(4). The Court therefore finds against the Credit Union on its 11 U.S.C. § 523(a)(4) claim.

---------------------------------------------END OF DOCUMENT---------------------------------------

ORDER SIGNED

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **Findings of Fact and Conclusions of Law** will be effected through the Bankruptcy Noticing Center to the following parties.

Richard C. Terry
Terry Jessop & Bitner
39 Exchange Place
Suite 100
Salt Lake City, UT 84111

Steven W. Shaw
P.O. Box 50840
Provo, Utah 84605